Toomer, Judge.
 

 One ¡node of impeaching the credit of a witness is, to introduce evidence, showing that lie is not worthy to be believed on oath. The credit of the witness may be impeached by general evidence, that he is not worthy to be believed upon his oath, (1
 
 Star. Ev.
 
 146.) The oíd rule of practice, laid down by
 
 Ld. Chief Baron Gilbert,
 
 confined the enquiry to the general character of the witness, as a man of veracity. In the year 1804, it w as decided in this State, that to
 
 discredit
 
 a witness, you might prove him to be of
 
 bad moral character ;
 
 and the question was not confined to his character for veracity. (2
 
 Hay. Rep.
 
 300.) This decision established a rule of practice, which lias prevailed since that period in our Courts, and has governed their proceedings.
 

 I perceive no necessity for any change
 
 in this rule;
 
 it enables juries, whoso peculiar province it is to weigh the credit of witnesses, to do it more correctly. A like practice has been adopted by the Courts of Kentucky. (3
 
 Marsh.
 
 261.)
 
 Should
 
 a witness, whose
 
 general
 
 character is proverbially bad as to licentiousness and levvdness, who is in his habits regardless of the precepts of religion, and reckless of the consequences of vice, be entitled to the same credit as another, whose character is without stain, and whose whole life has been marked by piety, virtue, and truth? And how could the jury know' the character of the vicious and immoral, without evidence ? Witnesses in our country are frequently strangers to jurors. An unprincipled man, although grovelling in other vices, which he has long practised, may for selfish purposes, artfully conceal the weakness of his
 
 *211
 
 character on the §core of veracity.
 
 Should
 
 not such habits lessen the weight,'and impair the- credit of a wit- ¥ , . , , , .. , . , , n.ess, although he may have established no general character
 
 bad
 
 as to
 
 truth? Should
 
 not a jury have access to
 
 sugh information,
 
 when suspending the scales of evidence to weigh the credit of a witness?
 

 This mode of examination tends to elicit truth, and thus advances the administration of justice; and when the rulp is known, can be productive of no evil or inconvenience, for the witness is not taken by surprise, but is presumed to come prepared to defend not only his general character for veracity, but also his
 
 general
 
 moral character.
 

 A witness introduced to impeach the general character of another, should not be pet mined' to give evidence of particular facts, nor repeat the mere hearsay of strangers to the witness, whose testimony is intended to be discredited, lie should only speak of (he general moral charaeter of the witness, as known among his neighbors and acquaintances. The discrediting witness should not express an opinion, founded on his knowledge
 
 of particular facts,
 
 nor upon the hearsay of strangers to the witness intended to be discredited. The discrediting witness may he asked, “ whether he would believe the other upon his oath,” or “whether the. oilier was worthy of belief on oath.” (1
 
 Starkie on Evidence, 146
 
 —Watmore v.
 
 Dickinson,
 
 2 Ves. &
 
 Beam.
 
 267.) But the Court should first ascertain that the discrediting witness is acquainted with the general character of the other, and has derived his information from proper sources, before he should be permitted to express his opinion of the credit to w hicli the assailed witness is entitled. If his opinion be formed upon a knowledge of particular facts, or on the heaisay of strangers, then the discrediiutg witness should not be asked whether the other, whose general character is intended to be impeached, “ is worthy of be
 
 *212
 
 lief on oath,” or “ whether lie would believe him upon his oath.”
 

 The previous questions to be settled are, whether the discrediting witness is acquainted with the general moral character of the other, and whether his knowledge has been derived from proper sources ? The first question to be asked appears to be, are you acquainted with the general moral character of the witness, whose credit is to be impeached ? (1
 
 Phil. Ex.
 
 212—4
 
 Esp.
 
 Rep. 102.) He may then be interrogated as to the means of obtaining his knowledge.
 
 (Swift’s Ex.
 
 143.) It is true, that
 
 in
 
 1
 
 Stark. Ex.
 
 147, it is said,
 
 “
 
 when general evidence of this nature has been given to impeach the credit of a witness, the opposite party may cross examine as to the grounds, upon which that belief is founded.” But it is then too late to correct the error; the injury has been done. An impression has been made on the minds of the jury, W'hic.h neither the charge of the Court, nor the remarks of Counsel, can entirely remove. Thus may artifice gain an advantage, to which honesty would disdain to stoop. A witness may be introduced, and express his opinion, when it may be known to the party offering him, that his knowledge did not authorize its expression. Justice could be perverted, and the rights of parties sacrificed by testimony, which the rules of evidence were designed to exclude.
 

 Let it not be said, that the error can be corrected, and the injury redressed by granting a new trial, because of the introduction of improper evidence. Increased expense, delay and inconvenience, must be the consequence. The opinion of the witness is forbidden ground, on which the Court should not tread, until it be ascertained that it rests on a firm foundation.
 

 Per Curiam. — Let the,judgment be affirmed.