Battle, J.
 

 It must now be considered as settled, that before you can impeach the credibility of a witness, by showing that he has previously made inconsistent statements, you must first put to him what are called the usual preliminary questions, in order that he may have an opportunity to explain himself. The
 
 Queen’s case,
 
 2 Brod. and Bing. 314, (6 Eng. C. L. Rep. 130);
 
 Edwards
 
 v. Sullivan, 8 Ire. Rep. 302. The same rule applies to depositions, unless the inconsistent statements were made after the time when the depositions were taken;
 
 Roberts
 
 v. Collins, 6 Ire. Rep. 223. In this case, they were made before, and the Judge, therefore, erred in permitting the impeaching testimony to be given.
 

 "We cannot see that the witness Stamps was more interested on the one side than the other, and, therefore, cannot pronounce that he was incompetent. It is a matter of mathematical certainty, that if two slaves be worth $2000, and ten, including these two, be worth $5000 only, th.e two will
 
 *430
 
 be of more value than a third of the whole; such, so far as we can discover, may be the case before us ; at all events, the defendant has not furnished us with the means of ascertaining that it is otherwise.
 

 The third and last objection raises a question of practice, in relation to the examination of witnesses called to impeach the characters of other witnesses, which we are not sorry to have an opportunity of attempting to settle.
 

 The question is, whether an impeaching witness, after ho has stated that the character of another witness is bad, can be asked whether, from his knowledge of that character, he would, if he were a juror, believe the witness upon his oath. "We are decidedly of opinion that such an enquiry, if permitted, gives occasion, either to improper replies, or makes the witness usurp the province of the jury, and is, therefore, wrong in principal, as well as embarrassing in practice. "We are aware that the rule to which we object has the sanction of the English Courts, and has been referred to without disapprobation by this Court. See the
 
 State
 
 v. Boswell,
 
 2
 
 Dev. Rep. 209, and the authorities there cited. By reference to the case just referred to, it will be seen that what the Court said upon this subject was not necessary to the decision, and that it was a mere statement of what was the English practice, without much reflection whether the rule was well or ill founded in principle. Those who have seen its application, must have observed that the replies of the impeaching witnesses were oftener prompted by their own opinion of the witness, than by their knowledge of his general character, that is, the estimation in which he was hold by others.. The replies, too, are very apt to be evasive and hypocritical.
 
 “
 
 The witness would believe him if he were disinterested, or had no feeling in the matter, but otherwise, he would not believe him.” These and such like replies are improper, because they do not fairly meet the inquiry, whether the character of the impeached witness is so bad that he ought not to be believed, though testifying under the sanction of an oath. But the great objection to the rule is, that the impeaching witness is
 
 *431
 
 called upon to do that which, belongs exclusively to the jury. It is, or ought to be, their province to pronounce -whether a witness is to be believed, and, consequently, whether a fact to which he testifies, supposing him not to be mistaken, is proved. The character, whether good or bad, of a witness, is a fact, and, of course, as to that, another witness may testify. Whether that character, if bad, is so bad that he ought not to be believed, is an opinion or conclusion which the law, as a general rule, forbids a witness to give, except in certain cases where he testifies as an expert. Our Legislature has been careful in guarding and preserving the exclusive pro- - vince of the jury to decide upon questions of fact, by prohibiting the judge from giving an “ opinion whether a fact is fully or sufficiently proved;” Eev. Stat., ch. 31, sec 136; Eev. Code, ch. 3.1, see. 130. We ought to be equally careful ill settling rules of practice, to protect the jury from an improper invasion of their province by the witnesses. The evil arising from such an, invasion, is thus ably and forcibly set forth by Siiepley, J., in the case of
 
 Phillips
 
 v. Kingfield, 1 Appleton’s Rep. 375. “To permit the opinion of a witness that another witness should not be believed, to be received and acted upon by a jury, is to allow the prejudices, passions and feelings of that witness to form, in part at least, the elements of their judgment'. To authorise the question to be put, whether the witness would believe another witness on oath, although sustained by no inconsiderable weight of authority, is to depart from sound principles and establish rules of law respecting the kind of testimony to be admitted for the consideration of the jury, and their duties in deciding upon it. It would, moreover, permit the introduction and indulgence, in Courts of justice, of personal and party hostilities, and of every unworthy motive by which man can be actuated to form the basis of an opinion to be expressed to a jury to influence their decision.” See, also, Greenleaf on Ev., sec 461. Our conclusion is, that the Judge erred in permitting the question to be put, after it was objected to by the plaintiff.
 

 Per Curiam.
 

 Judgment reversed, & a
 
 vem/re ele novo
 
 awarded.