## STATE v. RANSOM JAYNES.

*Indictment--Malicious Burning--Judge's Charge--Alibi--Evidence Sufficiency of Indictment.*

1. On the trial of an indictment for maliciously burning a mill with intent, &c., (under ch. 228, Acts 1874–'5) where the Court charged the jury at defendant's request "that if the defendant burnt the mill with intent to prevent detection of the alleged embezzlement or theft, although he knew incidental injury would be occasioned thereby, the jury should acquit," but added, "that the State was not bound to prove malice or any facts or circumstances besides the unlawful burning, from which the jury might presume malice and the defendant might negative the same by evidence either of the State's witness or his own;" *Held*, not to be error; although the instruction asked ought to have been refused, there being no evidence that he burned the mill with intent to prevent the detection of the embezzlement, &c.

2. In such case, the Court charged that it was "essential to the successful proof of an *alibi* that it should cover the whole time of the transaction in question, and where it fails to do so, it is regarded as the most suspicious evidence; that the witnesses all testified to having retired by ten o'clock, and it was for the jury to say whether the prisoner might have left or did leave his bed, commit the deed, and return before the alarm of fire was given;" *Held*, that the first portion of the charge was erroneous, but the error was cured by the subsequent qualification that "it was the jury to say whether," &c.

3. On such trial, *parol* evidence is admissible to prove the ownership of the property burned.

4. In an indictment under ch. 228, Acts 1874–'5, it is sufficient to describe the property burned as "one mill."

(*State v. Roseman*, 66 N. C. 634, cited and approved.)

INDICTMENT for Burning a Mill removed from ROWAN and tried at Fall Term, 1877, of DAVIDSON Superior Court, before *Cox, J.*

The defendant was indicted as follows: The jurors &c., present that Ransom Jaynes &c., feloniously, unlawfully

and maliciously did set fire to and burn one mill &c., the property of John C. Ford and John Lindsay with intent thereby to injure &c. (See Laws 1874–'5, ch. 228.)

There was no evidence of express malice but there was evidence tending to show that the defendant, who was in the employment of the prosecutor as a miller, had been stealing grain and flour from the mill, and that he had been informed before the burning that he was suspected of the same. His Honor was requested to instruct the jury that if defendant burnt the mill with intent to prevent detection of the alleged embezzlement or theft although he knew incidental injury would be occasioned thereby, the jury should acquit. This was given with the addition,—that the State was not bound to prove malice or any facts or circumstances besides the unlawful burning, from which the jury might presume malice, and the defendant might negative the same by evidence either of the State's witnesses or his own.

It was also in evidence that the mill was burned on the night of the 24th of April, 1876, and the defendant relying on an *alibi* introduced witnesses who testified that they were with the defendant on that night at his house, and that he and they retired between eight and nine o'clock and were aroused by an alarm of fire; about twelve o'clock. They ran immediately to the mill about 250 yards distant and found it nearly consumed. As to this defence, His Honor charged the jury as stated in paragraph 2 of the opinion of this Court. He also admitted parol evidence to prove the title to the property, and the defendant excepted. Verdict of Guilty. Motion in arrest of judgment. Motion denied. Judgment. Appeal by defendant.

*Attorney General*, for the State.
*Mr. W. H. Bailey*, for the defendant.

BYNUM, J. 1. There was no evidence that the prisoner burned or caused the mill to be burned with the intent to prevent the detection of his alleged embezzlement or theft. His Honor then might well have refused to give the instructions asked upon this point. But he did give instructions upon the hypothesis that such evidence had been offered, and though they ought to have been refused, we think they were substantially correct as given.

2. The Court charged the jury that it was " essential to the successful proof of an *alibi* that it should cover the whole time of the transaction in question, and when it fails to do so it is regarded as the most suspicious of evidence; that the witnesses all testified to having retired by ten o'clock; and it was for the jury to say whether the prisoner might have left, or did leave his bed, commit the deed, and return before the alarm of fire was given. " The first part of this charge would have been erroneous, but for the correction and qualification subsequently added. It is not " essential to the successful proof of an *alibi*, that it should cover the whole time of the occurrence. " Whether it covers the whole, or a part only, the effect of the evidence is a matter for the jury and they may give it the weight *they* may think it entitled to. The evidence was competent and therefore admissible, and it was an invasion of the province of the jury to tell them that unless the proof ₍covered the whole time of the transaction, it lacked the essential element of successful proof. The burden of proving an *alibi* did not rest upon the prisoner. The burden remained upon the State to satisfy the jury upon the whole evidence of the guilt of the prisoner. It was only necessary for the prisoner in his defence to produce such an amount of testimony, whether by evidence tending to shown an *alibi* or otherwise, as to produce in the minds of the jury a reasonable doubt of his guilt. But we think the subsequent part of the charge immediately following had the effect of cur-

ing the error of the first part, by presenting to the jury the true way of passing upon the evidence of the *alibi,* to wit: " that it was for the jury to say whether the prisoner might have left, or did leave his bed, commit the deed, and return before the alarm of fire was given." And in giving this instruction it was not improper to add those usual cautions which are necessary in dealing with this kind of evidence, which is regarded with suspicion unless it should cover the whole time of the transaction. Such evidence for the State if believed makes out a clear case of guilt; though doubtless there may be cases where it is the only evidence in the power of the defendant to give, and where justice can be vindicated only by introducing it: But under evensuch circumstances, it should be closely scrutinized because of its liability to abuse.

3. The Court admitted parol evidence of the ownership of the mill. This was proper. The title was not in issue, and if it had been, proof of possession was *prima facie* evidence of title and sufficient. *State* v. *Roseman,* 66 N. C. 634.

4. A motion in arrest of judgment was made for the insufficiency of the indictment. The charge in the bill is that the prisoner " feloniously, unlawfully, and maliciously did set fire to and burn one mill there situate," &c. It is insisted that the indictment fails to describe the kind of mill, so as to show that it was such a mill as the law has taken under its protection. The indictment is framed upon ch. 228, Laws 1874–'75, so much of which as is necessary to our case is in the following words ; " Whoever shall unlawfully and maliciously set fire to any church, chapel or meeting house, or shall unlawfully and maliciously set fire to any house, stable, coach-house, out-house, ware-house, shop, *mill,* or granary, * * * shall be guilty of felony," &c. The indictment it is seen pursues the words of the Act, which the authorities inform us is in general the safest and best way of charging a statutory offence. It is unreasonable to

suppose that the Act had reference to any other than mills constructed for manufacturing purposes. This is evident from its association in the Act with other property of the highest value, such as ware-houses, granaries, churches chapels and meeting-houses. But this Act must be taken in connection with the other statute laws of the State *in pari materia* and by reference to Bat. Rev., ch. 72, *Title,* " Mills," it will be found that the several kinds of mills are designated, and regulations are prescribed for their use and government. Grist mills are among those named and are declared to be public mills. The Act in question was clearly intended to protect grist mills which the evidence discloses this to have been. We think no one could be misled as to the offence charged.

No error.

PER CURIAM.                    Judgment affirmed.