ADAMS and CLARKSON, J. J., concurring; HOKE and STACY, J. J., dissenting, STACY, J., writing the dissenting opinion.
(768)
The defendant was convicted upon two bills of indictment charging sales of liquor to one Harry Sapphire. It appears from the evidence that conditions as to "bootlegging" in that town and county were such that the good citizens of the town of Rockingham organized a club to secure the enforcement of laws, among them W. N. Everett, now Secretary of State, and Walter L. Parsons, formerly a Senator, and other prominent and well known citizens of the State, as appears from the affidavits in the record, of which Mr. Everett's is a sample, that "there has been such widespread violation of the liquor laws in Richmond County, and that by reason of the numerous reports of violations and the inability of the officers of the town and county to arrest the violators of such laws on account of such officers being generally known, and the violators of such laws through their organization being kept posted on the movements of such officers, the boards of town and county commissioners, through their mayor and chairman, respectively, have agreed to have the violation of the liquor laws investigated by an outside representative, and to prosecute any and all persons dealing (769) in liquor." His affidavit further states that the "boards of town and county commissioners have been actuated by the highest motives in the employment of an investigator to ascertain violation of the liquor laws; that such action on the part of said boards has been for the best interests of the town and county, and with regard and pursuant to their duties as such commissioners," and that "the McLendon Club is an organization of Christian men of Richmond County, formed for the purpose of fostering Christian ideals, and to secure enforcement of all laws of the State," and was not "an organization to persecute any person or persons, but to prosecute any and all violators of the law."
There are a large number of affidavits in the record to sustain the action taken to procure the investigation of such violations. In order to ferret out the guilt parties, a detective from Atlanta was secured, with whose aid evidence was laid before the grand jury, indictments were found, and on trial the defendant was convicted of violation of the liquor laws in two cases.
Knowing that an attack would naturally be made upon the character of the detective, A. G. Corpening, one of the town commissioners, went to Atlanta after the preliminary hearing of the case against the defendant, and shortly before the trial in the Superior Court, to investigate *Page 808 
as to his character. At the trial the following questions was asked, "Mr. Corpening, have you made any investigation of Mr. Sapphire's character?" Objection by defendant, overruled, and exception. To the above question the witness replied, "I made a trip to Atlanta and made a personal investigation, and from my investigation I would say his character was good." This exception presents the only question necessary to consider in this action.
The evidence as to the guilt of the defendant is practically without exception, but the defendant insist's that this matter as to the character of the witness is fatal. The defendant's counsel, in his brief, raises no objection to the fact that the usual preliminary question was not put to this witness: "Do you know the general character of the witness Sapphire?" but bases his objection entirely upon the character of the testimony given in by Mr. Corpening, "Mr. Corpening swears that Sapphire's character was good, and states the ground for his testimony; that he made the trip to Atlanta, made a personal investigation, (770) and from his investigation would say that Sapphire's character was good."
From the record and the large number of affidavits filed, it is apparent that conditions were such in Rockingham and Richmond County that the good citizens organized what was called the "McLendon Club" to secure the enforcement of laws of the State. The board of commissioners of the town and county thought it necessary, in order to break up the great amount of whiskey dealing in said town and county, to employ a detective. They obtained from the detective agency in Atlanta, Harry Sapphire, one of their agents. He came to Rockingham, went to work and secured much of the evidence upon which the defendant was convicted. His residence was in Atlanta. The defendant contends that Corpening's testimony as to the evidence of general reputation obtained in this manner is not admissible. There is evidence by Corpening's high character. It would seem that being sent there by the officials of the town and by the good people who organized for the purpose of enforcing the law, that his motives could not be questioned, but however that might be, it was for the jury, his fellow-citizens, to weigh his testimony. It was just to the defendant as well as to the State to ascertain the character of the witness Sapphire. Evidence as to Sapphire's character could not otherwise well have been placed before the jury other than by the method used. Depositions by witnesses living in Atlanta would not have been *Page 809 
competent, nor could witnesses have been brought from there as to Sapphire's character, for that would have required proof of the character of such witnesses themselves. The jury were entitled to know Sapphire's character, which could not have been proven in any better way than by sending, as was done, a reliable, well known citizen of the county and of the town to investigate his standing and general character in Atlanta, where he lived. It is reasonable that under these circumstances Corpening was better informed as to the general character of Sapphire than the casual acquaintances, who are usually brought forward as character witnesses.
In North Carolina the testimony of a character witness is confined to the general reputation of the person whose character is attacked, or supported, in the community in which he lives. S. v. Parks, 25 N.C. 296;S. v. Perkins, 66 N.C. 126; S. v. Gee, 92 N.C. 756; S. v. Wheeler,104 N.C. 893; S. v. Coley, 114 N.C. 879, and numerous other cases since. Reputation is the general opinion, good or bad, held of a person by those of a community in which he resides. This is eminently a matter of hearsay, based upon what the witness has heard or learned, not as to any particular acts, but as to the general opinion or standing in the community.
Corpening's testimony could not be excluded as hearsay, for that is general reputation. The question was, What was Sapphire's (771) general reputation in Atlanta, where he lived? If a resident of Atlanta had been brought as a witness at this trial, and put upon the stand, he might have testified that he had never heard anything against Sapphire's character in Atlanta, and his testimony would have been admissible, its weight being left to the jury, as was Corpening's.
Corpening himself was well known to the jury. He stated in effect that he had been to Atlanta, that he had investigated as to the reputation — that is, the general character that Sapphire bore there, and his evidence being based upon such investigation, as he states, was certainly not inferior to the statements of casual acquaintances or others who are so often put upon the stand as character witnesses, and whose testimony is necessarily based upon hearsay — that is, what people say in regard to the person whose character is in question.
The defendant relied strenuously upon what was said in S. v. Parks,25 N.C. 296. In that case Johnathan [Jonathan] Worth was put upon the stand to impeach the character of one Lane. Worth, upon cross-examination, stated that he "did not know Lane's general character in his neighborhood; that he was not certain that he knew his general character in the county; that he did not know whether a majority of those he heard speak spoke well or ill of it, but that he had heard a great many *Page 810 
respectable men speak well of Lane's character and a great many equally respectable speak ill of it." In that case the Court held that the testimony of Worth was erroneously received, because "the witness is not to be discredited because of the opinion which any person, or any number of persons, may have expressed to his disadvantage, unless such opinions have created or indicated a general reputation of his want of moral principle. The impeached witness must, therefore, profess to know the general reputation of the witness sought to be discredited before he can be heard to speak of his own opinion or others as to the reliance to be placed upon the testimony of the impeached witness. S. v. Boswell, 13 N.C. 209; Downeyv. Smith 18 N.C. 62." In that case Jonathan Worth expressly stated that he did not know the general character of Lane, that he had heard a great many people speak both for and against him. It is very certain, therefore, that his testimony as to the character of Lane should have been rejected.
The present case is in strong contrast. The witness testified that he went to Atlanta to ascertain what was the general reputation of the impeached witness. That he had investigated, and that implies, of course, that under all these circumstances he had made careful inquiry such as could have been produced before the jury if the trial had taken place in Atlanta, and that as a result of his investigation (772) he would say that Sapphire's character was good.
The issue in this case was as to the violation of law alleged against the defendant. The question as to character of Sapphire, one of the witnesses against him, was, so to speak, entirely collateral. It was intended only to give to the jury some estimate of the weight they should give to the testimony of the witness Sapphire. The officials and leading public citizens had taken the trouble and been at the expense of sending Corpening (who was admittedly a man of high character in the community) to Atlanta to inquire as to the general reputation of the witness Sapphire. This speaks well for their sense of justice. The jury have passed upon the credibility of Corpening. Unlike Jonathan Worth in the case above quoted, Corpening stated that he had investigated as to Sapphire's character, and would say from such investigation that it was good.
It is rarely that the character witness can testify from investigation as to the good or bad character of the witness to which he testified. It was open to the defendant to bring witnesses from Atlanta to testify, if they could have done so, that Sapphire's general character was bad in that community. The good citizens of Rockingham, in enforcing the law, wished to be just. There is no question that the testimony, if believed by the jury, was that Corpening had gone to Atlanta for the purpose of ascertaining the general reputation of Sapphire among the *Page 811 
people who knew him, that he had carefully investigated it, and that he had found that his general reputation was good.
It is not often that a character witness can show himself so competent to testify as to the character of another, as Corpening on this occasion. His testimony was properly submitted to the jury for what weight they saw fit to give it.
After the fullest and most careful consideration of this case, we find
No error.
ADDENDUM.
Since writing the above, two concurring opinions have been prepared and filed herein. To my mind, what is said in these opinion tends to strengthen rather than to weaken the position that prejudicial error was committed on the trial of this cause.
It is contended that the objection to the testimony of A. G. Corpening is not properly presented. Why not? The defendant objected and excepted to the question propounded to the witness. He then objected and excepted to the admission of his evidence. To say that the exception cannot be sustained because the defendant has not assigned the correct reason therefore, in my opinion, is untenable. The appeal is not here in any limited sense. I do not understand it to be the rule with us that when objection is made to the admission of evidence, counsel must state the ground upon which the objection is based, unless requested to do so by the court. This may be the practice in other jurisdiction, but not so in North Carolina; at least, up to the present time the rule has been otherwise. The crucial point is that Corpening failed to qualify as a character witness, in the face of objection, and this is a (783) condition precedent to his right to testify under our decisions. It must follow, therefore, that his evidence is incompetent, and that the defendant has been erroneously convicted. The sufficiency of the form of the objection and the materiality of the evidence now in question were both presented and directly considered in S. v. Mills, 184 N.C. 694.
HOKE, J., concurs is dissent.
Cited: S. v. Beal, 199 N.C. 303; S. v. Hicks, 200 N.C. 540; S. v.Bittings, 206 N.C. 802; S. v. Satterfield, 207 N.C. 120; S. v. Carden,209 N.C. 413; S. v. Stamey, 209 N.C. 582; S. v. Smoak, 213 N.C. 94; S.v. Gibson, 216 N.C. 537; S. v. Kiziah, 217 N.C. 403; S. v. Bowen,226 N.C. 602. *Page 822