STATE OF NORTH CAROLINA v. DAVID WESLEY ABERNATHY AND JACK JAYNES

No. 11

(Filed 6 June 1978)

1. **Criminal Law § 89.8— cross-examination of accomplice—promise of leniency**

    A defendant is entitled to cross-examine an accomplice who has testified against him as to whether he has been promised immunity or leniency in return for his testimony.

2. **Criminal Law § 89.8— cross-examination of accomplice—improper questions**

    The trial court properly sustained the State's objections to defendants' improper questions to an accomplice concerning whether the accomplice had entered a guilty plea in another county and got off light and whether he knew that a deal could be worked out when one is charged with a crime.

3. **Criminal Law § 117.4— instruction on accomplice testimony—request**

    An accomplice testifying for the prosecution is generally regarded as an interested witness, and a defendant, upon timely request, is entitled to an instruction that the testimony of the accomplice should be carefully scrutinized.

4. **Criminal Law § 117.4— instruction on accomplice testimony**

    The trial court's charge on accomplice testimony was not insufficient in failing to include defendant's requested instruction that "an accomplice may be motivated to falsify his testimony in whole or in part because of his own self-interest in obtaining leniency in his own prosecution" where the court's charge was substantially in accord with the requested instruction and was in accord with instructions on accomplice testimony approved by the Supreme Court in prior decisions.

5. **Bills of Discovery § 6; Constitutional Law § 30— pre-trial discovery—oral statements of witness—list of State's witnesses**

    Defendants were not entitled under G.S. 15A-904(a) to the pre-trial discovery of a written copy of the oral statements made by a State's witness to an SBI agent, and they were not entitled by statute or the common law to a list of the names and addresses of the State's witnesses.

6. **Constitutional Law § 30— denial of pre-trial discovery—due process**

    Defendants were not denied due process by the court's refusal to permit pretrial discovery of a witness's statement to an SBI agent where (1) the statement was disclosed to defendants at trial in the form of the agent's testimony and notes, and (2) the witness's statement was not material and favorable to either defendant.

7. **Criminal Law § 113.6— two defendants—instructions—separate verdicts as to each**

    The trial court's instructions that the crime of burglary would have become complete "if the defendants or either of them broke and entered the

State v. Abernathy

dwelling . . . in the nighttime while the dwelling was occupied with the intent to commit larceny therein" was not susceptible to the construction that if the jury found one defendant guilty of first degree burglary it would then convict both defendants where the court was merely stating the elements necessary to constitute first degree burglary, and the court carefully instructed the jury in other portions of the charge that it should return separate verdicts as to each defendant.

**8. Criminal Law § 91.7; Constitutional Law § 68— denial of continuance to obtain fingerprint expert—right of confrontation**

Defendant was not denied his constitutional right to confrontation by the court's refusal to allow his motion, made when his case was called for trial, for a continuance to obtain an expert witness to testify regarding fingerprint evidence offered by the State against defendant where defendant had knowledge of the fingerprint evidence more than seven weeks prior to the trial; defendant waited more than a month before presenting to the court his motion for discovery of evidence; and when the motion was allowed, defendant still had four days before trial to locate an admittedly available expert to perform the relatively simple fingerprint comparison test.

**9. Criminal Law § 60— fingerprint testimony—chain of custody**

The State made a sufficient showing of the chain of custody of batteries found in a flashlight at the crime scene to permit a fingerprint expert to testify as to a comparison of a fingerprint found on one of the batteries where three witnesses testified that the flashlight and batteries were the same objects received, processed and delivered by each of them.

**10. Criminal Law § 118.4— fingerprint testimony—instructions—chain of custody**

Absent a request by defendant, the trial court was not required to instruct the jury that, before it could consider fingerprint evidence against defendant, it had to find that a flashlight battery from which defendant's fingerprint was lifted was the same battery as that found in a flashlight at the crime scene.

**11. Criminal Law § 60— fingerprint testimony—foundation—process of comparison not required**

Prior to giving his opinion a fingerprint expert is not required to explain the method of testing used and the specific manner in which he identified the prints in question. Instead, when the facts upon which a fingerprint expert bases his opinion are all within the expert's own knowledge, he may relate them himself and give his opinion, or, within the discretion of the trial judge, he may give his opinion first and leave the facts to be brought out on cross-examination.

**12. Criminal Law § 118.4— failure to charge on contention—absence of request**

By failing to object at the trial, defendant waived objection to the court's failure to state defendant's contention that his fingerprint was placed on a battery found in a flashlight at the crime scene while he made a sale at his uncle's store. Furthermore, defendant was not prejudiced by the court's failure to state such contention where the court extensively explained defendant's con-

tentions regarding his presence in another city on the day of the crime, the contentions stated by the court were all correct, and defendant's contention was presumably argued by his counsel to the jury.

### 13. Conspiracy § 3.1— criminal conspiracy—implied agreement

To constitute a conspiracy it was not necessary that the parties should have come together and agreed in express terms to unite for a common object; rather, a mutual, implied understanding was sufficient to constitute the offense of conspiracy.

### 14. Conspiracy § 6— conspiracy to commit armed robbery—sufficiency of evidence

While there was no direct evidence in this prosecution for conspiracy to commit armed robbery that defendant expressly agreed to commit the crime, the State's evidence was sufficient for the jury where the circumstantial evidence was sufficient to create an inference that defendant knew of an agreement to commit the robbery and that there was an implied understanding between him and the others to accomplish this purpose, and where the evidence tended to show that defendant participated in the crime by driving the other parties to the scene of the crime and by waiting for the actual robbers in order to assist them in escaping after the robbery.

### 15. Criminal Law § 89.1— testimony as to bad character

The trial court properly permitted a deputy sheriff and an SBI agent to testify as to defendant's bad character where both witnesses first stated that they knew defendant's general character and reputation in the community where he lived. Furthermore, the trial court did not err in failing to strike each witness's testimony as to defendant's character upon the conclusion of defendant's cross-examination of the witness since the cross-examination did not elicit such facts as would disqualify either witness from testifying.

### 16. Criminal Law § 114.2— instruction—no expression of opinion

In a prosecution for burglary and armed robbery, the court's instruction that "the State contends that he is guilty, even though under all the evidence there is— [defendant] never entered the house of the Rectors" did not constitute an expression of opinion that defendant was present at the scene in an automobile where the court was simply recounting the State's contention that defendant was an aider and abettor to the crimes.

APPEAL by defendants from *Fountain, J.*, 6 June 1977 Session of MCDOWELL Superior Court.

Defendants were tried and convicted upon bills of indictment, proper in form, of first degree burglary, armed robbery, and conspiracy to commit armed robbery. Each defendant was sentenced to life imprisonment on the charge of first degree burglary, thirty years imprisonment on the charge of armed robbery, and ten years on the charge of conspiracy, these sentences to run concurrently.

Defendants appealed to this Court on the sentence of life imprisonment, and defendants' convictions of armed robbery and conspiracy were certified for initial appellate review by this Court pursuant to G.S. 7A-31(a).

The State offered evidence tending to show that on 8 May 1973, at about 9:00 p.m., Eddie Joe Rector, his wife and stepdaughter were at their home in the Zion Hill community of McDowell County. Three men wearing masks and gloves entered through the back door of the home, stuck a pistol to Rector's head, and demanded money. The men then tied the feet of the occupants of the house, taped their eyes, and ransacked the house for about thirty minutes. They took some $700 in cash and three watches, and then departed, leaving a flashlight on the couch. None of the victims were able to identify their assailants and none of the property taken from the Rector home has been recovered. A fingerprint taken from the battery in the flashlight matched the fingerprint of defendant Abernathy.

Ronald Clark testified for the State. His testimony tends to show that, at the request of defendant Abernathy, Clark, Abernathy, Jaynes and a man called "Cherokee" went to the Rector home for the purpose of robbing Mr. Rector. Abernathy had told Clark that the man who lived there had sold some land and had the sale money in his house because he did not believe in banks. The four men went to a cemetery near Rector's home in a car driven by defendant Jaynes. Clark, Abernathy and "Cherokee" took masks, tape, shotguns, and a .38-caliber pistol from the trunk of the car and walked to Rector's house. Jaynes remained in the car. The other three men then entered the house, tied up the occupants, taped their eyes, and searched the house for about thirty minutes. They left with a box full of stolen articles. On the way out Clark tore the distributor cap out of Rector's car.

Defendant Jaynes offered evidence tending to show that on 8 May 1973 he was at work at the Wamsutta plant in Morganton, that the payroll records of the company showed that he punched in at 2:56 p.m. and punched out at 11:05 p.m., and that he knew nothing about the robbery and had no part in it.

Defendant Abernathy offered evidence tending to show that he was not present when the robbery occurred and knew nothing about it. On the day of the crime he was in Fayetteville deliver-

ing a mobile home, and stayed overnight in that city. He testified that the flashlight found at the Rector's home did not belong to him, and that he had worked at his uncle's store where batteries similar to those found in the flashlight were sold.

Other evidence pertinent to the decision will be set out in the opinion.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Ralf F. Haskell for the State.*

*Louis L. Lesesne, Jr. for David W. Abernathy, defendant appellant.*

*C. Frank Goldsmith, Jr. for Jack Jaynes, defendant appellant.*

MOORE, Justice.

Defendants file separate briefs. Some of the same or similar assignments of error are brought forward in each brief, while other assignments of error pertain only to each individual's appeal. We will first consider those questions presented jointly by defendants.

### Abernathy's and Jaynes' Joint Appeal

Defendants first insist that the trial court erred in refusing to allow them to cross-examine the State's witness Ronald Clark, an admitted accomplice, concerning his expectation of leniency as a result of his testimony; this, defendants argue, was necessary to establish Clark's bias and interest in the case.

[1] This Court has held that a defendant is entitled to cross-examine an accomplice who has testified against him as to whether he has been promised immunity or leniency in return for his testimony, and that the denial of this right would constitute prejudicial error. *State v. Harris*, 290 N.C. 681, 228 S.E. 2d 437 (1976); *State v. Carey*, 285 N.C. 497, 206 S.E. 2d 213 (1974); *State v. Spicer*, 285 N.C. 274, 204 S.E. 2d 641 (1974); *State v. Roberson*, 215 N.C. 784, 3 S.E. 2d 277 (1939). The scope and duration of cross-examination rest, however, largely in the discretion of the trial judge, and he may limit cross-examination when it becomes mere-

ly repetitious. *State v. Harris, supra; State v. Bumper*, 275 N.C. 670, 170 S.E. 2d 457 (1969); *State v. Maynard*, 247 N.C. 462, 101 S.E. 2d 340 (1958).

Defendants strongly rely on the cases of *State v. Carey, supra*, and *State v. Roberson, supra*, to support their position. These cases are distinguishable from the instant case in that in both *Roberson* and *Carey* the trial judge's limitation on cross-examination totally precluded inquiry into the subject matter to which the respective defendant's cross-examination was directed.

In the case before us, Clark had entered a plea of guilty but had not been sentenced. The defendants were permitted to cross-examine Clark at length concerning the circumstances and reasons surrounding his testifying as a witness for the prosecution, and as to whether he made any deals with the State in exchange for his testimony. They further cross-examined Clark extensively about his criminal record and prior confrontations with the law, including prior instances in which he had been charged with various crimes and had been allowed to plead guilty to lesser offenses.

[2] The specific questions to which defendants except are as follows:

### Counsel for defendant Abernathy

"Q. Well, you know how to maneuver to save your own skin, because you did that in Burke County, didn't you —

MR. LOWE: OBJECTION.

Q. You entered a plea of guilty and got off very light?

MR. LOWE: OBJECTION.

THE COURT: OBJECTION SUSTAINED."

### Counsel for defendant Jaynes

"Q. You knew what a deal was, didn't you?

A. Yes sir.

Q. You knew they could be worked out when you're charged with a crime, didn't you?

MR. LOWE: OBJECTION.

THE COURT: SUSTAINED."

The record indicates that the same or similar questions had previously been asked of and answered by the witness Clark. The witness testified that he had been promised nothing for his testimony; that he had pled guilty to the charges against him but had "made no deals, no nothing"; that he had pled guilty to other offenses during his criminal career in order to receive a lighter sentence; and that his prior counsel had worked out deals for him for these unrelated offenses so that he might receive lighter sentences.

In addition to being repetitive, the question asked by counsel for defendant Abernathy was objectionable for lack of proper foundation — prior to asking this question counsel failed to inquire as to the specific Burke County offense and its eventual disposition. The question asked by counsel for defendant Jaynes is objectionable in that it calls for his knowledge of a supposed fact not in evidence and of questionable validity. Counsel for defendants made no efforts to rephrase their questions and make proper inquiry. We hold, therefore, that the trial judge did not abuse his discretion by sustaining the objections to these improper questions.

[4] Prior to the court's charge to the jury, counsel for defendant Jaynes filed a written request for jury instructions concerning the consideration to be given the testimony of the State's witness Ronald Clark, an admitted accomplice. (The record fails to show that counsel for Abernathy made a similar request for instructions.) Pursuant to this request, the court instructed the jury concerning the consideration to be given to Clark's testimony. Defendants, however, contend that the court's charge was insufficient in that it failed to include in this instruction the contention that "an accomplice may be motivated to falsify his testimony in whole or in part because of his own self-interest in obtaining leniency in his own prosecution."

[3] An accomplice testifying for the prosecution is generally regarded as an interested witness, and a defendant, upon timely request, is entitled to an instruction that the testimony of the accomplice should be carefully scrutinized. *State v. Harris, supra; State v. White*, 288 N.C. 44, 215 S.E. 2d 557 (1975); *State v.*

*Bailey*, 254 N.C. 380, 119 S.E. 2d 165 (1961). Since an instruction to carefully scrutinize an accomplice's testimony is a subordinate feature of the trial, the trial judge is not required to so charge in the absence of a timely request for the instruction. *State v. Vick*, 287 N.C. 37, 213 S.E. 2d 335 (1975); *State v. Roux*, 266 N.C. 555, 146 S.E. 2d 654 (1966); *State v. Reddick*, 222 N.C. 520, 23 S.E. 2d 909 (1943). But when a defendant makes a request in writing and before argument to the jury for an instruction on accomplice testimony, the court should give such instruction. *State v. White*, *supra*. And once the judge undertakes to instruct the jury on such subordinate issue it must do so accurately and completely. *State v. Eakins*, 292 N.C. 445, 233 S.E. 2d 387 (1977); *State v. Hale*, 231 N.C. 412, 57 S.E. 2d 322 (1950). The court, however, is not required to give the requested instruction in the exact language of the request, but is only required to give such instruction in substance. *State v. Spicer*, 285 N.C. 274, 204 S.E. 2d 641 (1974); *State v. Hooker*, 243 N.C. 429, 90 S.E. 2d 690 (1956); *State v. Pennell*, 232 N.C. 573, 61 S.E. 2d 593 (1950).

In the present case, concerning Clark, the trial judge instructed the jury:

> "Now, as to the witness Clark, I instruct you that he is in Law what is known as an accomplice. And our Court has said that a person may be convicted on the unsupported testimony of an accomplice, if that testimony is believed by the Jury. However, in considering the weight and credibility you will give to the testimony of Clark, I instruct you that you should carefully examine his testimony for the purpose of determining what weight and credibility it deserves. You should scrutinize it with care, all to the end that you will determine whether he is truthful or not, because in Law, an accomplice does have an interest and bias in the case and in what your verdict will be.

> "So, Members of the Jury, it's dangerous to convict upon the testimony of an accomplice but if you find that he is truthful, then you may, if you are satisfied from the evidence and beyond a reasonable doubt, convict upon his unsupported testimony."

[4] The instruction as given by the trial judge is substantially in accord with the request made by the defendant Jaynes and is in

accord with instructions on accomplice testimony approved by this Court in *State v. Willard*, 293 N.C. 394, 238 S.E. 2d 509 (1977), and *State v. Hairston*, 280 N.C. 220, 185 S.E. 2d 633 (1972). This assignment of error is overruled.

[5]  On 3 May 1977 defendant Abernathy filed a pre-trial motion for discovery pursuant to G.S. 15A-903 in which he sought, among other things, the following:

> "(2) Written or recorded statements by any witness implicating this defendant in any of the crimes for which he is charged. . . .

> *       *       *

> (7) Copies of any written statements made by any witness intended to be used by the State.

> (8) Names and addresses of all witnesses intended to be used by the State."

On 17 May 1977 defendant Jaynes filed a similar motion requesting, in pertinent part, the following:

> "(4) Any documents, photographs, tangible objects, or other items enumerated in G.S. 15A-903(d) which are within the possession, custody or control of the State and are to be used as evidence at trial, or were obtained from or belonged to the defendant, including any physical evidence whatsoever found at the scene of the alleged crime;

> *       *       *

> (7) Any information, materials, or evidence which may be favorable to the accused or exculpatory in nature. *Giles v. Maryland*, 386 U.S. 66 (1967); *Brady v. Maryland*, 373 U.S. 83 (1963)."

In response to these motions, the district attorney filed a motion for protective order together with supporting affidavits pursuant to G.S. 15A-908 requesting that defendants' motions be denied. On 31 May 1977, after considering the above motions and record and after hearing arguments of counsel for defendants, the court entered an order granting defendants' motions for discovery in part, but denying each of the items set out above.

Defendants did not renew their requests for the above requested information at their trial on 6 June nor did they seek to exclude or otherwise try to limit the testimony of the State's witness Clark or make any other motion relative thereto at trial.

The State's witness, Clark, did not make a written or recorded statement to anyone concerning this case. He did, however, make an oral statement to S.B.I. Agent Bruce Jarvis, who took written notes. Defendants contend that the trial court erred in refusing to allow their request for pre-trial disclosure of the information requested as this refusal denied them their statutory right to discovery of such information.

G.S. 15A-904(a) provides, in part:

"Except as provided in G.S. 15A-903(a), (b), (c) and (e), this Article does not require the production . . . of statements made by witnesses or prospective witnesses of the State to anyone acting on behalf of the State."

In the recent case of *State v. Hardy*, 293 N.C. 105, 235 S.E. 2d 828 (1977), we held that under G.S. 15A-904(a) the State is not required to provide a defendant with statements made by witnesses or prospective witnesses of the State to anyone acting on behalf of the State. We further held that neither statute nor common law requires the State to furnish a defendant with a list of the names and addresses of witnesses the State intends to call. *See also State v. Tatum*, 291 N.C. 73, 229 S.E. 2d 562 (1976). Therefore, defendants in this case were not entitled to receive a written copy of the oral statement made by Clark to S.B.I. Agent Jarvis or a list of the State's witnesses. This assignment is without merit.

[6] Defendants also contend, citing *Brady v. Maryland*, 373 U.S. 83, 10 L.Ed. 2d 215, 83 S.Ct. 1194 (1963), and *United States v. Agurs*, 427 U.S. 97, 49 L.Ed. 2d 342, 96 S.Ct. 2392 (1976), that they had a constitutional right to the material sought, and that the court's refusal to permit discovery of the witness's statement denied them due process. *Brady, supra*, held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 10 L.Ed. 2d at 218.

The Supreme Court has not clearly indicated the time at which the disclosure of material and favorable evidence must be made; but, since *Brady* and *Agurs* were decided on grounds of the due process right to a fair trial (and not on grounds of the right to adequately prepare for one's defense), it appears that the prosecutor is required to disclose only *at trial* evidence that is material and favorable to the defense. *See State v. Hardy, supra.* Cf. *United States v. Wolfson*, 289 F. Supp. 903 (S.D.N.Y. 1968); *United States v. Armantrout*, 278 F. Supp. 517 (S.D.N.Y. 1968), *aff'd* 411 F. 2d 60 (2d Cir. 1969). In present case the evidence requested by the defendants in their pre-trial discovery motions was, in fact, disclosed to them at trial in the form of the corroborative testimony of Agent Bruce Jarvis, and counsel for defendants were permitted to see the notes transcribed at Clark's interrogation and from which Agent Jarvis testified. More importantly, however, the *Brady* principle is limited to evidence that is both material and exculpatory or favorable to the defendant, and in present case there has been no showing that there was suppression of any evidence material or favorable to either defendant. Therefore, defendants' constitutional rights were not violated.

[7] Defendants next assign as error the following portion of the trial judge's instruction to the jury:

"So, if the defendants or either of them broke and entered the dwelling of Mr. Rector in the nighttime while the dwelling was occupied with the intent to commit larceny therein at the time of the breaking and entering, then the crime of burglary would have, at that point, become complete."

Defendants contend that this portion of the court's instructions to the jury was susceptible to the erroneous interpretation by the jury that they could convict both defendants if they found one guilty. This Court has held on numerous occasions that where two or more defendants are jointly tried for the same offense a charge which is susceptible to the instruction that the jury must convict all if it finds one guilty is reversible error. *State v. Tomblin*, 276 N.C. 273, 171 S.E. 2d 901 (1970); *State v. Williford*, 275 N.C. 575, 169 S.E. 2d 851 (1969); *State v. Parrish*, 275 N.C. 69, 165 S.E. 2d 230 (1969). The Court has further held, however, that the charge must be construed "as a whole in the same connective

way in which it was given," and if it fairly and correctly presents the law when thus considered, it affords no ground for reversing the judgment. *State v. Tomblin, supra; State v. Hall,* 267 N.C. 90, 147 S.E. 2d 548 (1966). The question here, therefore, is whether the court's charge is susceptible to an interpretation that if the jury found one defendant guilty of first degree burglary they would then convict both defendants without considering individually whether each was guilty. We think not.

In the portion of the charge to which defendants except, the trial judge was simply stating the elements necessary to constitute burglary in the first degree. He was careful to instruct the jury that it should return separate verdicts as to each defendant. In doing so, the trial judge first stated:

"So, Members of the Jury, it is for you to determine the guilt or innocence of each defendant. Each defendant has three cases pending against him. They are tried jointly merely as a matter of convenience and each is entitled to separate consideration of your verdict as to each charge against each defendant. Nothing that I've said or done or any ruling that I have made during the progress of the trial should be considered by you as an expression or intended expression of what your verdict should or should not be. That's a matter entirely for you."

In the final mandate to the jury concerning the defendant Abernathy on the charge of first degree burglary, the trial judge said:

"Therefore, Members of the Jury, on the charge of first-degree burglary, as to the defendant Abernathy, if you find from the evidence and beyond a reasonable doubt that he broke and entered the dwelling house of Mr. and Mrs. Rector on the date alleged, in the nighttime, while — and that it was their dwelling, and that it was occupied by them at the time and that he did so with the intent to commit larceny therein, then it would be your duty to return a verdict of guilty as charged in that case. That is guilty of burglary in the first degree. If the State has failed to so satisfy you or if upon consideration of all the evidence you have a reasonable doubt as to his guilt of that, you would acquit him of that."

The trial judge then gave a similar separate mandate as to defendant Jaynes on the burglary charge. Considering the charge as a whole we are convinced that the jury was not misled by that portion of the charge to which defendants except. This assignment of error is overruled.

We next consider the questions presented by the individual appeals.

## Abernathy's Appeal

[8] Defendant Abernathy first contends that the trial court erred in failing to allow his motion for continuance made by him when his case was called for trial. This motion was made specifically for the purpose of obtaining an expert witness to give opinion testimony regarding fingerprint evidence offered by the State against defendant Abernathy. Defendant argues that he was not given sufficient time to investigate this fingerprint information and that the denial of his motion for continuance is a denial of his rights under the Sixth Amendment and Article I, Section 23, of the State Constitution to confront witnesses against him and to adequately prepare for his own defense. We disagree.

A motion for continuance is ordinarily addressed to the sound discretion of the trial court, and the trial court's ruling is not subject to review absent abuse of discretion. *State v. Brower*, 289 N.C. 644, 224 S.E. 2d 551 (1976); *State v. Smathers*, 287 N.C. 226, 214 S.E. 2d 112 (1975). However, if the motion is based on a right guaranteed by the Federal and State Constitutions, the question presented is one of law and not of discretion, and the ruling of the trial court is reviewable on appeal. *State v. Brower, surpa; State v. Harrill*, 289 N.C. 186, 221 S.E. 2d 325 (1976); *State v. Lane*, 258 N.C. 349, 128 S.E. 2d 389 (1962). Since defendant's motion for continuance is based on a right guaranteed by the Federal and State Constitutions, the decision of the trial judge is reviewable as a question of law. Thus, the question to be answered is: Did the refusal of the trial court to grant the prisoner's motion for a continuance impinge upon his constitutional right of confrontation, in that it denied him a reasonable time within which to prepare and present his defense? *State v. Farrell*, 223 N.C. 321, 328, 26 S.E. 2d 322, 326 (1943).

Defendant had knowledge of this fingerprint evidence as early as 15 April, more than seven weeks prior to trial. He filed motion by 2 May for an order requiring the State to deliver this evidence to him. Counsel for defendant waited until 31 May to present this motion to the court. The information he sought was given to him by the State on 2 June, four days prior to trial, and defendant knew prior to this time that the State would proceed to trial on 6 June. In spite of this, he apparently made no effort to contact an expert in fingerprint comparisons, even though he knew a police scientist inside the county who was either qualified to perform such service or who knew where an expert could be found. Finally, counsel for defendant admitted at the hearing on his motion for continuance that a comparison of the fingerprint information in his hands involved a process which required but a few minutes work.

The fact that defendant waited almost a month before presenting his motion for discovery to the court, plus the fact that, when said motion was allowed, defendant still had four days to locate an admittedly available expert who would perform the rather simple comparison test, indicate that defendant was afforded a reasonable opportunity to adequately prepare his defense. This being the case, his right of confrontation guaranteed him by the Sixth Amendment to the United States Constitution and Article I, Section 23, of the North Carolina Constitution has not been violated. This assignment of error is without merit.

[9] Defendant Abernathy next argues that the trial judge committed prejudicial error in allowing S. R. Jones to testify that he compared one print on a fingerprint card of defendant taken in 1968 and identified this with a print on chrome paper containing fingerprint lifts from the flashlight battery found at the scene of the crime. Defendant argues that the State failed to lay a proper foundation for Jones's testimony in that it failed to show a proper chain of custody for the flashlight and battery. Defendant argues that the State made no showing that the flashlight and batteries found at the scene of the crime were the same as those from which the prints were lifted. He grounds this argument on the contention that the State failed to show who in the S.B.I. had handled the box containing the flashlight prior to its reaching Mr. Jones, and failed to show who had custody of the flashlight and

batteries between their receipt by Jones and the lifting of the impressions onto the chrome paper.

Of the authentication of real evidence, this Court has said: "There are no simple standards for determining whether an object sought to be offered in evidence has been sufficiently identified as being the same object involved in the incident giving rise to the trial and shown to have been unchanged in any material respect. . . . Consequently, the trial judge possesses and must exercise a sound discretion in determining the standard of certainty required to show that the object offered is the same as the object involved in the incident giving rise to the trial and that the object is in an unchanged condition. [Citations omitted.]" *State v. Harbison*, 293 N.C. 474, 238 S.E. 2d 449 (1977). *See also* McCormick, Evidence § 212 (2d Ed. 1972).

In the present case three witnesses testified that State's Exhibit 7, the flashlight and batteries found at the scene of the crime, was the same object received, processed and delivered by each of them. This testimony points without question to the conclusion that the latent print examined by Mr. Jones was the same print lifted by Mr. Simpson from the flashlight battery found by Deputy Sturgill in the Rector home. *Cf. State v. Shore*, 285 N.C. 328, 204 S.E. 2d 682 (1974). This assignment is without merit.

[10] Under this same assignment of error defendant argues that the trial court committed prejudicial error in failing to instruct the jury regarding the chain of custody. The defendant contends that the trial judge was under a duty to instruct the jury that they had to find that the battery from which defendant's print was lifted was the same battery as that found in the flashlight in the Rector home, and that such finding had to be made before the jury could consider the fingerprint evidence against defendant. Suffice it to say here that a trial judge is not under a duty to instruct the jury that, before it can consider a certain item of evidence against a party, it must find that said evidence is what the presenting party contends it is. A party desiring elaboration on a subordinate feature of the case must aptly tender a request for special instructions. 4 Strong, N.C. Index 3d, Criminal Law § 113.3, and cases cited therein. Since defendant failed to tender a request for special instructions regarding the probative force of the fingerprint evidence, he has no cause to complain. This assignment is overruled.

Under his next assignment of error defendant Abernathy contends that it was error for the court to permit the fingerprint expert, S. R. Jones, to express his opinion that the lift taken from the battery was identical with a print on defendant's fingerprint card, where the expert failed to support his opinion by testimony regarding the scientific process by which the fingerprint comparison was made. Defendant contends that, in laying the foundation for testimony regarding fingerprints, the offering party must not only qualify the witness as an expert in the field and trace and identify the objects and specimens analyzed and compared, but also the expert must explain the manner in which the test or comparison is made and explain the scientific process at the basis of his conclusion.

In their briefs, counsel for both defendant and the State admit that they have found no cases in this State directly on point. In *State v. Huffman*, 209 N.C. 10, 182 S.E. 705 (1935), the defendant objected to that which the defendant in present case argues is required. There the witness, at the request of the solicitor, demonstrated his method of taking fingerprints and explained how he identified them. The Court, in holding that such testimony was admissible, in no manner indicated that it was a necessary step in the laying of the foundation for expert testimony regarding fingerprints.

[11] Accordingly, we hold that prior to giving his opinion a fingerprint expert is not required to explain the method of testing used and the specific manner in which he identified the prints in question. Instead, as is the rule concerning other forms of expert testimony, when the facts upon which a fingerprint expert bases his opinion "are all within the expert's own knowledge, he may relate them himself and give his opinion; or, within the discretion of the trial judge, he may give his opinion first and leave the facts to be brought out on cross-examination. . . ." 1 Stansbury, N.C. Evidence § 136, p. 446 (Brandis rev. 1973); *State v. Hightower*, 187 N.C. 300, 121 S.E. 616 (1924); 7 Wigmore on Evidence, § 1922 (3d Edition 1940); 2 Wigmore, *ibid*, § 675. This assignment is overruled.

[12] Defendant Abernathy finally argues that the trial court erred in its instruction to the jury by failing to state defendant's contention regarding the source of the fingerprints on the bat-

tery, after having stated the State's contentions regarding the same. In his instruction to the jury the trial judge said:

> "So the State contends that it was Abernathy's finger-print and that Abernathy had necessarily handled the flashlight, or at least the battery to the flashlight and that no prints were found, so the State contends, on the outside of the flashlight because the men were wearing gloves, so it is contended by the State, when the alleged crimes were com-mitted within the home."

The trial judge, in recounting defendant Abernathy's evidence, did not mention the specific contention of that defend-ant concerning the source of the fingerprints on the battery, but instead recounted at length the defendant's general contentions regarding his whereabouts on the day of the crime. Defendant now says that it was his contention that he handled batteries while working in his uncle's store, that his fingerprint must have been placed on the battery while making a sale at that store, and that the trial judge should have instructed the jury regarding this contention.

In *State v. Cook*, 273 N.C. 377, 381-82, 160 S.E. 2d 49, 52 (1968), this Court, speaking through Justice Huskins, said:

> "A trial judge is not required to state the contentions of the litigants. But when he undertakes to give the contentions of one party he must fairly charge as to those of the other. Failure to do so is error. . . ."

Moreover, where the court states the contention of the State on a particular phase of the case, it is error to fail to state defend-ant's opposing contention arising out of the evidence on the same aspect of the case. *State v. Thomas*, 284 N.C. 212, 200 S.E. 2d 3 (1973); *State v. Fairley*, 227 N.C. 134, 41 S.E. 2d 88 (1947). However, objections to the charge in reviewing the evidence and stating the contentions of the parties must ordinarily be made before the jury retires, in order that the trial judge will have an opportunity for correction; otherwise, they are deemed to have been waived and will not be considered on appeal. *State v. Thomas, supra; State v. Tart*, 280 N.C. 172, 184 S.E. 2d 842 (1971); *State v. Williams*, 279 N.C. 515, 184 S.E. 2d 282 (1971).

No such objection was made in this case. Defendant failed to bring to the court's attention its failure to instruct on his contention as to how the battery bearing his fingerprint may have been left at the scene of the crime. If defendant desired a more comprehensive statement of his contention, he should have requested it at trial.. *State v. Thomas, supra; State v. Tart, supra.* His failure to do so operates as a waiver of this objection on appeal. Moreover, in view of the fact that the trial judge fully, fairly, and extensively explained defendant's contentions regarding his presence in another city on the day of the crime; and in light of the fact that the contentions actually stated by the court were in all respects correct; and finally, since this same contention was presumably argued by defendant just moments before in his jury argument, we fail to see how the omission of this specific contention could have prejudiced the defendant. This assignment is overruled.

## Jaynes' Appeal

Defendant Jaynes first contends that, although there was ample evidence from which the jury could have found that prosecution witness Ronald W. Clark and codefendant David W. Abernathy entered into an agreement to rob the Rector residence, there is no evidence whatsoever in the record of any agreement between defendant Jaynes and the other alleged co-conspirators. Defendant contends, therefore, that the court erred in denying his motion for dismissal of the charge of conspiracy made at the close of the State's evidence and at the close of all the evidence.

[13] A criminal conspiracy is an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means. *State v. Bindyke,* 288 N.C. 608, 220 S.E. 2d 521 (1975). To constitute a conspiracy it is not necessary that the parties should have come together and agreed in express terms to unite for a common object; rather, a mutual, implied understanding is sufficient, so far as the combination or conspiracy is concerned, to constitute the offense. The conspiracy is the crime and not its execution. *State v. Carey,* 285 N.C. 497, 206 S.E. 2d 213 (1974). "Therefore, no overt act is necessary to complete the crime of conspiracy. As soon as the union of wills for the unlawful purpose is perfected, the offense of conspiracy is complete. [Citation omitted.]" *State v. Bindyke, supra,* at 616, 220 S.E.

2d at 526. The existence of a conspiracy may be established by direct or circumstantial evidence. "Direct proof of the charge [conspiracy] is not essential, for such is rarely obtainable. It may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy . . . ." *State v. Whiteside*, 204 N.C. 710, 169 S.E. 711 (1933).

Upon a motion for nonsuit in a criminal action, the court considers the evidence in the light most favorable to the State, resolves all contradictions and discrepancies therein in its favor and gives it the benefit of every reasonable inference which can be drawn from the evidence. *State v. Goines*, 273 N.C. 509, 160 S.E. 2d 469 (1968); *State v. Cutler*, 271 N.C. 379, 156 S.E. 2d 679 (1967).

In present case State's witness Clark testified: "I know David Abernathy and Jack Jaynes. I did see them prior to May 8th, 1973, at my house. . . . At the time they came . . . they asked if I wanted to make some money to go check out a place." Clark further testified that on 8 May Abernathy came to his home in a pickup truck and they then drove straight to Jaynes' house where they got out of the truck and into a parked car. Jaynes and a man named "Cherokee" then came out of Jaynes' trailer and got in the car with them. With Jaynes driving, they then drove directly to the Rector residence in Marion, McDowell County. They went by the house one time, turned around at an intersection, and drove to a graveyard about 100 yards from the Rector house. They then got out of the car and took masks, guns and tape from its trunk. Clark, Abernathy and "Cherokee" put on masks and went toward the Rector house. There they broke into the house and robbed the Rectors. While they were in the Rector house for thirty minutes to an hour, Jaynes drove the car up and down the road in front of the house.

[14] While there is no direct evidence that the defendant Jaynes expressly agreed to commit the crime, the circumstantial evidence is sufficient to create an inference that Jaynes knew of an agreement to rob the Rector residence and that there was an implied understanding between him and the others to accomplish this purpose. Furthermore, Jaynes participated in the crime by driving the other parties to the scene of the crime, and by waiting for the actual robbers in order to assist them in escaping

after the robbery was completed. This evidence is sufficient to "point unerringly to the existence of a conspiracy." This assignment is overruled.

[15] Defendant Jaynes next contends that the court erred in allowing into evidence testimony of Deputy Sheriff Trinks and S.B.I. Agent Jarvis as to his bad character without first requiring a sufficient foundation to be laid to establish the witnesses' knowledge of the community's regard for defendant's character, and in failing to allow his motion to strike the witnesses' testimony after his cross-examination as to the factual basis of their knowledge

When a defendant testifies, but does not otherwise put his character in issue, he is subject to impeachment by evidence of bad character on the issue of his credibility but not as substantive evidence of guilt or innocence. 1 Stansbury, N.C. Evidence § 108 (Brandis rev. 1973). Character is generally proved by evidence of reputation, and although the rule formerly prevailing in North Carolina was that the testimony of a character witness must be confined to the general reputation of the person in the community in which he lives, *State v. Steen*, 185 N.C. 768, 117 S.E. 793 (1923), evidence will now be received from one knowledgeable with any "community or society in which the person has a well-known or established reputation. Such reputation must be his *general* reputation, held by an appreciable group of people who have had adequate basis upon which to form their opinion. Of course, the testifying witness must have sufficient contact with that community or society to qualify him as knowing the general reputation of the person sought to be attacked or supported." *State v. McEachern*, 283 N.C. 57, 67, 194 S.E. 2d 787, 793-94 (1973).

The record in instant case shows that defendant testified but otherwise did not put on any evidence of his character. The State, therefore, properly could put on evidence of defendant's bad character on the issue of credibility. In *State v. Hicks*, 200 N.C. 539, 157 S.E. 851 (1931), this Court stated:

> "The rule is, that when an impeaching or sustaining character witness is called, he should first be asked whether he knows the general reputation and character of the witness or party about which he proposes to testify. This is a

preliminary qualifying question which should be answered yes or no. If the witness answer it in the negative, he should be stood aside without further examination. If he reply in the affirmative, thus qualifying himself to speak on the subject of *general* reputation and character, counsel may then ask him to state what it is. This he may do categorically, *i. e.*, simply saying that it is good or bad, without more, or he may, of his own volition, but without suggestion from counsel offering the witness, amplify or qualify his testimony, by adding that it is good for certain virtues or bad for certain vices. *S. v. Colson*, 193 N.C., 236, 136 S.E., 730; *S. v. Nance*, 195 N.C., 47, 141 S.E., 468."

In this case each of the State's witnesses answered the "preliminary qualifying question" in the affirmative, that is, that they knew defendant's general character and reputation in the community where he lived. This requirement having been met, the court properly overruled defendant's objections. *State v. Denny*, 294 N.C. 294, 240 S.E. 2d 437 (1978); *State v. Stegmann*, 286 N.C. 638, 213 S.E. 2d 262 (1975); *State v. McEachern, supra; State v. Hicks, supra*. Furthermore, the court did not err in failing to strike each witness's testimony as to defendant's character upon the conclusion of defendant's cross-examination of them. The cross-examination did not elicit such facts as would disqualify them from testifying. Moreover, defendant apparently did not move to strike the testimony of Trinks until after he had been excused and another witness had been called, and defendant at no time objected to or moved to strike Jarvis's testimony after his examination into the facts of his knowledge of defendant's reputation. This assignment of error is without merit.

[16] Defendant Jaynes finally argues that the trial court erred in the following instruction:

"[T]he State contends that he is guilty, even though under all the evidence there is—Jaynes never entered the house of the Rectors."

Defendant argues that the statement amounts to a comment by the judge in violation of G.S. 1-180 in that the jury could have interpreted the remark as an assertion by the judge that Jaynes, though he never entered the house, was still present at the scene in an automobile.

This argument is manifestly without merit. Placed within its context, the instruction clearly reveals that the judge was simply recounting the State's contention that defendant was an aider and abettor to the crime, for the sentence which immediately follows the above is, "The State contends that he was present as an aider and abettor." Since the judge made it quite clear that he was simply recounting the State's contentions, the jury could not have understood the statement to be an opinion by the judge regarding the facts of the case. The language will not support the inference which defendant tries to draw from it. This assignment is without merit.

We have made a careful examination of the entire record and find no prejudicial error.

No error.