STATE OF NORTH CAROLINA v. RICHARD CHARLES DOWLESS

No. 8130SC996

(Filed 6 April 1982)

**1. Criminal Law § 75.11— in-custody statement—waiver of right to counsel**

   Even if defendant initially invoked his right to counsel when he asked the interrogating officer if he could provide him with an attorney and the officer responded that he could not do this but that defendant could telephone an attorney, defendant subsequently waived counsel by informing the officer that he would respond to those questions which he desired to answer.

**2. Criminal Law § 57— foundation for ballistics testimony**

   A proper foundation was laid for opinion testimony by an expert in the field of firearms that bullet fragments removed from a murder victim's head were fired from a pistol which was taken from defendant where the witness gave a detailed description of the tests performed by him which formed the basis for his opinion.

**3. Homicide § 21.7— second degree murder—sufficiency of evidence**

   The State's evidence *aliunde* defendant's confession was sufficient to support conviction of defendant for second degree murder where a neighbor testified that he saw defendant arrive at the victim's house around 8:00 p.m. on a certain date and leave fifteen or twenty minutes later; a pathologist fixed the time of death as occurring on that date between 6:00 p.m. and 8:00 p.m.; another witness testified that some time after midnight defendant told him that he had killed someone and pointed a pistol at the witness, and that the witness wrestled the pistol from the defendant and later turned it over to the authorities; and a firearms expert testified that in his opinion bullet fragments removed from the victim's body were fired from this pistol.

APPEAL by defendant from *Sitton, Judge.* Judgment entered 15 May 1981 in Superior Court, JACKSON County. Heard in the Court of Appeals on 1 March 1982.

Defendant was charged in a proper bill of indictment with the first degree murder of Bonnie Buchanan. The jury found defendant guilty of second degree murder. From a judgment imposing a prison term of 60 years maximum and 50 years minimum, defendant appealed.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Lemuel W. Hinton, for the State.*

*Creighton W. Sossomon, for defendant appellant.*

HEDRICK, Judge.

[1] Defendant assigns as error the trial court's denial of his motion to suppress an alleged confession. Prior to trial defendant filed this motion to suppress evidence of statements made by him following his arrest on 31 January 1981. He alleged that the statements were taken after he had requested counsel, that this request was ignored by law enforcement officials, and that he never knowingly withdrew his request. At the *voir dire* hearing on this motion, Dan Crawford, an S.B.I. agent, testified that he saw defendant at the Rutherford County Jail at approximately 5:05 p.m. on 31 January 1981. In Crawford's opinion, defendant "was in full possession of his faculties." Crawford read defendant his *Miranda* rights, and defendant indicated he understood them. Crawford testified further:

> I then asked him [defendant] if he would sign the written waiver. He then asked me if I would be able to provide him an attorney today, and I instructed him that I was not able to be the one to provide him with an attorney today through the courts. At that time I advised him that I was not able to call an attorney, that there was a telephone on the desk and a telephone book, and he stated he did not want to call an attorney.

> He first refused to sign the waiver, and by the statement he made then it implied to me that he wanted an attorney.

Then, he said he did not want to make a written state-
ment and sign it, and I asked him if he was willing to talk to
me on the condition that if he did not want to answer any
particular question he could refuse to do so. He said he
understood this, and he would talk to me without an attorney
present, and I again handed him the rights form, and at that
time he signed it.

.   .   .

This form was signed January 31, 1981, a short time
after 5:05 p.m.

On this exhibit [waiver of rights form] appears the ques-
tion "Do you want a lawyer?" and following that in the blank
line appears the word "yes" which was written in and then
marked through. It was marked through by me. This is my
handwriting. I did this after Mr. Dowless questioned me
about appointing him a lawyer, and after I had advised him
that I could not and had given him the opportunity to make a
phone call. He then stated he would talk to us on the condi-
tion that he could answer only those questions which he
wanted and refused to answer those he did not wish to
answer. At that point he signed the waiver of rights. I struck
out the word "yes" prior to the time that this exhibit was
handed to the defendant and prior to the time that he signed
it.

The entire conversation took approximately 1 hour and
45 minutes. During this time, no threats were made by
myself or Sheriff Holcombe to induce the defendant to make
a statement. No promises were made by either myself or
Sheriff Holcombe to the defendant.

Defendant's *voir dire* testimony tends to show that on the
evening of 30 January 1981 he was arrested for driving under the
influence and placed in the Rutherford County Jail. On the follow-
ing day Crawford informed him that he was not under arrest for
the murder of Ms. Buchanan and read him his *Miranda* rights.
Defendant then asked for a lawyer. He signed the rights form
after Crawford informed him that a lawyer could not be "gotten
and that was it." Defendant verified the statement allegedly made
by him after Crawford indicated that his brother was being held

in custody. After hearing the *voir dire* testimony, the trial court made detailed findings of fact consistent with the State's evidence and concluded, *inter alia*, that defendant "freely, knowingly, intelligently and voluntarily waived each of his Constitutional rights."

Defendant argues in his brief that the court's findings of fact are not supported by the evidence as it is interpreted by the law, particularly by that promulgated in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed. 2d 378 (1981). We disagree. In *Edwards*, the defendant was arrested on 19 January 1976 and asserted his right to counsel and his right to remain silent. Without furnishing defendant an attorney, policemen confronted him the next morning. As a result of this confrontation, defendant made incriminating oral admissions. The Court held:

> [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold than an accused, such as Edwards, having expressed his desire to deal with police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police. [Footnote omitted.]

451 U.S. at 484-85, 101 S.Ct. at 1884-85, 68 L.Ed. 2d at 386. In the case *sub judice*, it is not even clear that defendant invoked his right to counsel. Defendant merely asked Agent Crawford if he could provide him with an attorney. Crawford responded that he could not do this but that defendant could telephone an attorney. Defendant then indicated that he did not wish to call an attorney. Even if defendant did initially invoke his right to counsel, he subsequently waived counsel by informing Crawford he would respond to those questions he desired to answer. This waiver was also knowingly and intelligently given. Defendant testified on *voir dire* that he understood how a lawyer is appointed to represent a defendant because one had been appointed for him when he had been jailed in the past, that he understood his *Miranda* rights, and that no one threatened or made any promises to him. Since

the trial court's findings of fact are supported by this evidence of-
fered on *voir dire*, they will not be disturbed on appeal. *State v.
Harris*, 290 N.C. 681, 228 S.E. 2d 437 (1976). The findings of fact,
in turn, support the conclusion that the defendant's statements
were made voluntarily and knowingly.

Defendant also assigns as error the admission into evidence
of certain testimony given by Agent Crawford. Crawford testified
that defendant informed him that immediately prior to his
shooting Ms. Buchanan, he obtained a pistol from the nightstand
beside his bed. Crawford admitted that this statement was not
part of the notes made by him during his 31 January 1981 inter-
view with defendant. Instead, this statement was recorded in
notes Crawford made on 27 April 1981 at the request of the
District Attorney. Defendant argues that the State was limited to
the contents of the notes taken by Crawford during the 31
January 1981 interrogation; and that the admission of this
testimony concerning the whereabouts of the pistol "can hardly
be characterized as 'harmless' or consistent." We fail to see how
defendant possibly could have been prejudiced by this testimony.
In the notes recorded on 31 January 1981 and allegedly verified
by defendant, he informed Crawford that he began working for
Ms. Buchanan as her housekeeper in December of 1980. The notes
further indicate that defendant planned to visit his father in
Fayetteville on the evening of 30 January 1981; that Ms.
Buchanan did not want him to leave; that she threatened to call
the sheriff and that as she was trying to call, he shot her in the
face with a .22 caliber pistol. In light of this evidence and our
determination of its admissibility, we conclude that the location of
the pistol carried little if any weight in the jury's deliberation of
defendant's guilt or innocence.

[2]  During the trial, Agent Douglas Branch was accepted by the
court as an expert in the field of firearms and tool mark iden-
tification. Defendant has assigned error to Branch's opinion
testimony  that  the  bullet  fragments  removed  from  Ms.
Buchanan's head were fired from the pistol which was taken from
defendant's possession on the evening of 31 January 1981. Defend-
ant contends that a proper foundation was not laid before this
testimony was admitted. Specifically there was no evidence that
Branch performed tests upon which his opinion testimony was
based. The testimony of Branch totally refutes defendant's con-

tentions. Branch gave a detailed description of the tests he performed. When the facts upon which an expert bases his opinion are within his own knowledge, the expert may relate these facts and give his opinion. Also the trial judge has the discretionary power to allow the expert to give his opinion first and then leave the facts to be elicited on cross-examination. *See State v. Abernathy*, 295 N.C. 147, 244 S.E. 2d 373 (1978). This assignment of error is therefore overruled.

[3] Defendant further assigns error to the court's denials of his motions for nonsuit made at the close of the State's evidence and at the close of all the evidence. When a motion for nonsuit is made in a criminal action, the trial court must consider all of the evidence in the light most favorable to the State. The court must then determine whether there is a reasonable basis upon which the jury might find that the offense charged in the indictment was committed and that defendant was the perpetrator. *State v. Hyatt*, 32 N.C. App. 623, 233 S.E. 2d 649, *disc. rev. denied*, 292 N.C. 733, 235 S.E. 2d 786 (1977). In the case *sub judice* defendant argues that his motions should have been granted because the State erroneously relied upon defendant's alleged confession in proving its case. The State's evidence, *aliunde* this confession, was sufficient to allow the submission of the case to the jury. A neighbor testified that he saw defendant arrive at Ms. Buchanan's house around 8:00 p.m. on 30 January 1981 and leave fifteen or twenty minutes later. The pathologist, who examined the body, fixed the time of death as occurring between 6:00 p.m. and 8:00 p.m., "give or take two hours." Timothy Hudgins testified that he saw the defendant soon after midnight on 31 January 1981 when defendant stopped and asked directions to Morganton. Defendant told Hudgins he had killed someone and then pointed a pistol at him. Hudgins wrestled the pistol from defendant and later turned the weapon over to the authorities. A firearms expert testified that in his opinion the bullet fragments removed from Ms. Buchanan's body were fired from this pistol. Based on this evidence alone, defendant's motions for nonsuit were properly denied.

Defendant's final assignment of error concerns two instances of alleged expressions of opinion made by the trial judge during his instructions to the jury. We have carefully examined those portions of the charge and find no error. We further note that defendant had the burden of showing a prejudicial effect from

these alleged expressions and has failed to make such a showing. *State v. Faircloth,* 297 N.C. 388, 255 S.E. 2d 366 (1979).

We hold defendant had a fair trial free of prejudicial error.

No error.

Chief Judge MORRIS and Judge VAUGHN concur.